UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIS PATTON,

       Plaintiff,

                                    Case No. 2:04-cv-297

v.                                       HON. R. ALLAN EDGAR

RICHARD VANDERSCHAEGEN, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Willis Patton an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants David DenBeste and Ronald Vanderschaegen. Defendants were employed by the Michigan Department of Corrections (MDOC) at LMF during the pertinent time period.  Defendant DenBeste no longer is employed by the MDOC[1].

Plaintiff alleges in his complaint that on October 6, 2004 defendants removed him from his cell and handcuffed him for purposes of taking him to the shower.  Plaintiff was escorted to the shower stalls where his handcuffs were removed.  Plaintiff began taking a shower.  Approximately five or six minutes later defendants returned to handcuff plaintiff and return him to his cell.  Plaintiff claims that while being escorted, defendant DenBeste said something which plaintiff did not hear.  Plaintiff claims that he turned his head to ask defendant DenBeste what he

---

[1]Defendant DenBeste also has a dispositive motion filed.  However, plaintiff's responsive pleading is due to be filed on February 20, 2006.

said, but defendant DenBeste quickly grabbed plaintiff by the neck and hair and shoved plaintiff into defendant Vanderschaegen.  Defendant Vanderschaegen and plaintiff fell into the wall and pipe.

Plaintiff alleges that defendant DenBeste then punched plaintiff in the mouth several times causing plaintiff to bleed from the mouth.  Defendant Vanderschaegen allegedly twisted, pulled and yanked on plaintiff's arms.  Plaintiff alleges that defendants forcefully slammed plaintiff to the ground.  Defendant Vanderschaegen continued to twist, pull and yank plaintiff's arm. Defendant DenBeste kneed plaintiff in the head and applied pressure to plaintiff's head.  Other officers arrived at the scene, applied leg irons and escorted plaintiff to his cell.

Plaintiff alleges that he did not threaten or assault the defendants to provoke any action.  Defendant Vanderschaegen, according to plaintiff, failed to intervene or attempt to stop the brutal attack by defendant DenBeste.  Plaintiff alleges that defendant Vanderschaegen actually assisted defendant DenBeste.  Plaintiff requested medical care, but did not receive assistance until the next shift.  Plaintiff alleges that defendant DenBeste has a history of using excessive, unreasonable and unnecessary force on prisoners and has been terminated from his position as a result of his assaultive behavior.

Plaintiff asserts that the incident was witnessed by several prisoners and videotaped. Defendants have submitted a copy of a CD-R taken from a fixed position security camera of the alleged incident.  An interdepartmental and institutional investigation was conducted regarding the incident. Defendant Vanderschaegen issued plaintiff a misconduct ticket, which plaintiff claims was false and designed to cover up the assaultive conduct by defendant DenBeste.

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff alleges that defendants violated his due process and equal protection rights under the Fourteenth Amendment.  Plaintiff also asserts state law claims of assault

and battery and a violation of the Michigan constitution to be free from cruel and unusual punishment.

Presently before the Court is defendant Vanderschaegen's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to demonstrate exhaustion of administrative remedies.  In addition, defendant Vandershschaegan argues that plaintiff cannot state a claim for relief.  Defendant Vanderschaegan also moves for summary judgment.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court must construe the complaint in the light most favorable to plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations.  *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47).  The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts.  *Mayer*, 355 U.S. at 638.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *Delorean*, 991 F.2d at 1240.  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Id.* (internal quote omitted).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant argues that plaintiff failed to exhaust his grievance remedies by failing to exhaust his due process and equal protection claims.  The primary purpose behind the exhaustion requirement is to give the state prison systems "an opportunity to handle prison grievances internally before recourse to the federal courts becomes available."  *Thomas v. Woolum,* 337 F.3d 720, 725 (6th Cir.2003).  A prisoner is not required "to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory."  *Burton v. Jones*, 321 F.3d 569, 757 (6th Cir. 2003).  All that is necessary to satisfy the exhaustion requirement is "fair notice of the alleged

mistreatment or misconduct that forms the basis of" the claims made in the prisoner's complaint. *Id.* Plaintiff has satisfied his burden of showing that he exhausted his grievance remedies.

Plaintiff claims that his equal protection rights were violated by defendant Vanderschaegen. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Plaintiff has not set forth any allegation against defendant Vanderschaegen that could support plaintiff's claim that he was treated differently because of his race. In the opinion of the undersigned, plaintiff cannot show that defendant Vanderschaegen violated plaintiff's equal protection rights.

Plaintiff has also asserted due process claims against defendant Vanderschaegen. To the extent that plaintiff alleges that his due process rights were somehow violated by defendant Vanderschaegen, plaintiff's claim fails because he received due process. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

- 5 -

Similarly, to the extent that plaintiff alleges a violation of his substantive due process rights that claim should be analyzed under the standards applicable to the Eighth Amendment.  *See e.g. Graham v. Connor*, 490 U.S. 386, 395 (1989) (where there is "an explicit textual source of constitutional protection" for a plaintiff's claim, the standard applicable to that source, and "not the more generalized notion of substantive due process" should be applied); *Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999)  (*citing Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (same).  *See also Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990) (a prisoner's substantive due process claim is properly analyzed solely as one under the Eighth Amendment, "which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions").

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. 347.  The

- 6 -

Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff claims that defendant DenBeste initiated the use of force and that plaintiff fell into defendant Vanderschaegen. Defendant Vanderschaegen states that he noticed that plaintiff had turned toward defendant DenBeste. In the next instant, defendant Vanderschaegen was forced into the pipe closet with plaintiff against him. Defendant Vanderschaegen immediately felt pain in his left shoulder. As a result of this initial contact, defendant Vanderschaegen suffered a broken collar bone. Plaintiff does not dispute these facts. Plaintiff claims that defendant Vanderschaegen yanked, twisted and pulled on plaintiff's handcuffs. Defendant Vanderschaegen asserts, however, that he simply tried to maintain control of the lead strap and control of the handcuffs during the entire incident and that he did not yank, twist or pull on the handcuffs. Defendant Vanderschaegen wrote the misconduct charge against plaintiff because it was his belief that plaintiff forced Vanderschaegen into the pipe closet and caused his broken collar bone. Ultimately, plaintiff was

found not guilty of the misconduct ticket because it was determined that defendant DenBeste caused the incident and pushed plaintiff into defendant Vanderschaegen.

In the opinion of the undersigned, defendant Vanderschaegen's use of minimal force during the incident was a reasonable attempt to control the situation. It is undisputed that defendant Vanderschaegen was not involved in initiating the force, but was reacting to control the situation after it began. Defendant Vanderschaegen actually suffered a significant injury immediately upon first contact with plaintiff. Moreover, it is clear that defendant Vanderschaegen did not know exactly what had happened at the time that he issued the misconduct ticket. Defendant Vanderschaegen knew that he received a significant injury as a result of being forced into the pipe closet by plaintiff. Defendant Vanderschaegen did not initially know that defendant DenBeste caused plaintiff to push into defendant Vanderschaegen. A review of the CD-R supports defendant Vanderschaegen's version of what occurred. It appears that defendant DenBeste and plaintiff were exchanging words, although there is no sound. Plaintiff and defendant DenBeste turned toward each other more than once. Defendant DenBeste clearly shoved plaintiff, making the initial contact, into defendant Vanderschaegen. Defendant Vanderschaegen appears to have been caught by surprise and immediately went down from the push. The CD-R does not provide any support for plaintiff's claim that defendant Vanderschaegen used excessive force. Under these circumstances, it is recommended that defendant Vanderschaegen be dismissed from this case.

Defendant Vanderschaegen also moves for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

- 9 -

than the plaintiff because it is not for the court to make credibility determinations at this stage of the

proceeding." *Id.*

        The operation of the qualified immunity standard depends substantially upon the level

of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in light of the preexisting law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert.*

*denied*, 520 U.S. 1157 (1997).

        The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been
> authoritatively decided by the United States Supreme Court, the Court
> of Appeals, or the highest court of the state in which the alleged
> constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

        Thus, qualified immunity is not triggered only where the very action in question was

previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing

violated plaintiff's federal rights. *Id.*

        Furthermore, a defendant need not actively participate in unlawful conduct in order

to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect

a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and

a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir.

- 10 -

1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As to defendant Vanderschaegen, there is no dispute of a material fact which could establish that defendant Vanderschaegen violated plaintiff's rights.

To the extent that plaintiff is claiming that defendant Vanderschaegen violated plaintiff's state law rights, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

- 11 -

Accordingly, it is recommended that the defendant Vanderschaegen's motion to dismiss and for summary judgment (Docket # 33) be granted, dismissing defendant Vanderschaegen from this case.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 14, 2006